# 21-3079-cv

## United States Court of Appeals

*for the*

## Second Circuit

EVERYTOWN FOR GUN SAFETY ACTION FUND, INC.,

*Plaintiff-Appellee,*

– v. –

DEFCAD, INC., ODYSEE USER xYEEZYSZN, DEFCAD USER
xYEEZYSZN, THE GATALOG, DEFCAD USER FREEMAN1337,
TWITTER USER xYEEZYSZN, PHILLIP ROYSTER,

*Defendants-Appellants,*

ODYSEE USER THEGATALOG-PRINTABLEMAGAZINES,

*Defendant,*

TWITTER, INC.,

*Intervenor.*

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFF-APPELLEE

MARCELLA BALLARD
MARIA R. SINATRA
VENABLE LLP
*Attorneys for Plaintiff-Appellee*
1270 Avenue of the Americas, 24th Floor
New York, New York 10020
(212) 307-5500

**DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL INTEREST**

Pursuant to Fed. R. App. P. 26.1, Plaintiff-Appellee Everytown for Gun Safety Action Fund, Inc. ("Everytown") hereby states that it is a 501(I)(4) tax-exempt nonstock nonprofit corporation, that has no parent company and no publicly held corporation owns more than 10 percent of its stock because it is a nonstock corporation.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ iv

**JURISDICTIONAL STATEMENT** .................................................. 1
   I.    The Appeal Should Be Dismissed as Moot ............................... 1

   II.   The Collateral Order Doctrine Does Not Provide a Basis for Immediate Appeal ................................................................. 2

**STATEMENT OF ISSUES** ............................................................ 5

**PRELIMINARY STATEMENT** ..................................................... 6

**STATEMENT OF THE CASE** ........................................................ 9
   1.    Facts Pertaining to Everytown's Claims. .............................. 9

   2.    Procedural History Relating to the Discovery Order. .......... 13

**STANDARD OF REVIEW** ............................................................ 17

**SUMMARY OF ARGUMENT** ....................................................... 17

**ARGUMENT** ............................................................................ 19
   I.    **The Discovery Order Should be Affirmed Under the Law-of-the-Case Doctrine.** ........................................................ 19

   II.   **The District Court Did Not Abuse Its Discretion in Issuing the Discovery Order.** ....................................................... 21

      a.  The Discovery Order Was Procedurally Proper. ................ 22

      b.  The District Court Acted Within Its Discretion Applying *Arista*. ...... 23

         i.  *Arista* is the Correct Standard. ................................. 24

            1.  Appellants Have Not Put Forth Any Authority Warranting Deviation from *Arista*, or *Stare Decisis* ....... 25

            2.  The *Arista* Standard Has Been Applied Outside of the Copyright Context. ........................................... 29

         ii.  The District Court Properly Applied *Arista* ................ 36

   III.  **Appellants Do Not Have an Unfettered Right to Anonymous Free Speech.** ...................................................... 39

      a.  Appellants' Use of the Registered Everytown Trademarks as Source Identifiers Weighs Against Anonymity. .............. 41

ii

i.   Appellants Are Targeting the Everytown Marks Under N.Y. Gen. Bus. L. § 360-l...................................................................41

ii.   Appellants are Violating the Lanham Act (15 U.S.C. §§ 1114, 1125(a))...........................................................................44

iii.   Appellants' Use of the Everytown Marks is Not Permissible Parody. ............................................................................46

iv.   Appellants' Use of the Everytown Marks is Not Nominative Fair Use...........................................................................53

b.  The *Rogers* Test Is Inapplicable to Appellants' Use of the Everytown Marks.....................................................................56

**CONCLUSION**..............................................................**59**

**CERTIFICATE OF COMPLIANCE** ...............................**61**

# TABLE OF AUTHORITIES

**Cases**

*Am. Express Warehousing, Ltd. v. Transamerica Ins. Co.*,
380 F.2d 277 (2d Cir. 1967).........................................................................3

*Anheuser-Busch, Inc. v. Balducci Publ'ns*,
28 F.3d 769 (8th Cir. 1994).........................................................................40

*Arista Records, LLC v. Doe 3*,
604 F.3d 110 (2d Cir. 2010)............................................... 5, 8, 17, 23, 39

*Assef v. Does 1-10*,
No. 15-cv-01960, 2015 WL 3430241 (N.D. Cal. May 28, 2015) ...........30

*Azkour v. Little Rest Twelve, Inc.*,
No. 10-cv-4132, 2012 WL 402049 (S.D.N.Y. Feb. 7, 2012) ..................38

*Blackwelder v. Safnauer*,
866 F.2d 548 (2d Cir. 1989).........................................................................1

*Bloomberg, L.P. v. John Does 1-4*,
No. 13-cv-01787, 2013 WL 4780036 (S.D.N.Y. June 26, 2013)...........30

*Cafeteria & Rest. Workers Union, Loc. 473, AFL-CIO v. McElroy*,
367 U.S. 886 (1961)..................................................................................22

*Capalbo v. United States*,
No. 10-cv-2563, 2012 WL 1288486 (S.D.N.Y. Apr. 16, 2012)..............38

*Cartier, Inc. v. Deziner Wholesale, L.L.C.*,
No. 98-cv-4947, 2000 WL 347171 (S.D.N.Y. Apr. 3, 2000)..................55

*Chase Manhattan Bank, N.A. v. Turner & Newall, PLC*,
964 F.2d 159 (2d Cir. 1992).........................................................................3

*Cliff Notes, Inc. v. Bantam Doubleday Dell Pub. Grp.*,
886 F.2d 490 (2d. Cir. 1989)................................................... 35, 46, 51

*Coopers & Lybrand v. Livesay*,
437 U.S. 463 (1978) ..................................................................................3

*Coty Inc. v. Excell Brands, LLC*,
277 F. Supp. 3d 425 (S.D.N.Y. 2017) ....................................................41

*Cruden v. Bank of N.Y.*,
957 F.2d 961 (2d Cir. 1992)....................................................................17

*Dallas Cowboys Cheerleaders, Inc. v. Scoreboard Posters, Inc.*,
600 F.2d 1184 (5th Cir. 1979) ................................................................39

*Deeper Life Christian Fellowship, Inc. v. Sobol*,
948 F.2d 79 (2d Cir. 1991).......................................................................1

*Defense Distributed v. United States Department of State*,
838 F.3d 451 (5th Cir. 2016) ..................................................................28

*Del. Riverkeeper Network v. N.Y. State Dep't of Env't Conservation*,
788 Fed. App'x 65 (2d Cir. 2019)............................................................1

*Dendrite International, Inc. v. John Doe*,
342 N.J. Super. 134 (App. Div. 2001) ....................................................24

*Doe v. Harris*,
772 F.3d 563 (9th Cir. 2014) ..................................................................27

*EEOC v. KarenKim, Inc.*,
698 F.3d 92 (2d Cir. 2012).......................................................................18

*Ensor v. Does 1-15*,
No. A-19-cv-00625, 2019 WL 4648486 (W.D. Tex. Sept. 23, 2019)....................31

*Exxon Mobile Corp. v. Healey*,
28 F.4th 383 (2d Cir. 2022) ......................................................................2

*Faconnable USA Corp. v. John Does 1-10*,
No. 11–cv–00941, 2011 WL 2015515 (D. Col. May 24, 2011)...................... 32, 33

v

*First City, Texas-Houston, N.A. v. Rafidain Bank*,
150 F.3d 172 (2d Cir. 1998)......................................................................17

*Fischer v. N.Y. State Dep't of L.*,
812 F.3d 268 (2d Cir. 2016).........................................................................3

*Fogel v. Chestnutt*,
668 F.2d 100 (2d Cir. 1981).......................................................................20

*Gelman v. Ashcroft*,
372 F.3d 495 (2d Cir.2004).........................................................................25

*Gen. Motors Co. v. Gibson Chem. & Oil Corp.*,
786 F.2d 105 (2d. Cir. 1986).........................................................................4

*Greene v. WCI Holdings Corp.*,
136 F.3d 313 (2d Cir. 1998).......................................................................22

*Gucci Shops, Inc. v. R. H. Macy & Co.*,
446 F. Supp. 838 (S.D.N.Y. 1977) ............................................................47

*Gulino v. Bd. Of Educ. of N.Y.C. Sch. Dist. of N.Y.*,
555 Fed. App'x 37 (2d Cir. 2014)..............................................................21

*Haley v. Pataki*,
60 F.3d 137 (2d Cir. 1995)...........................................................................2

*Harley Davidson, Inc. v. Grottanelli*,
164 F.3d 806 (2d Cir. 1997).............................................................. 40, 57

*Heritage of Pride, Inc. v. Matinee NYC, Inc.*,
2014 WL 12783866 (S.D.N.Y. June 20, 2014) .........................................45

*Highfields Capital Management L.P. v. Doe*,
385 F. Supp. 2d 969 (N.D. Cal. 2005) ......................................................32

*Hormel Foods Corp. v. Jim Henson Prods.*,
73 F.3d 497 (2d. Cir. 1996)........................................................................42

vi

*In re Anonymous Online Speakers*,
661 F.3d 1168 (9th Cir. 2011) ...............................................27

*In re Cap. Cities/ABC, Inc.*,
918 F.2d 140 (11th Cir. 1990) ...............................................39

*In re Subpoena Issued to Friedman*,
350 F.3d 65 (2d Cir. 2003)...................................................17

*In re Zarnel*,
619 F.3d 156 (2d Cir. 2010)..................................................25

*Indigital Sols., LLC v. Mohammed*,
No. H-12-2428, 2012 WL 5825824 (S.D. Tex. Nov. 15, 2012).............31

*Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Security Univ., LLC*,
823 F.3d 153 (2d Cir. 2016)..................................................54

*Jefferson v. Delgado Cmty. Coll. Charity Sch. of Nursing*,
602 Fed. App'x 595 (5th Cir. 2015) .........................................5

*John Wiley & Sons, Inc. v. Doe Nos. 1-30*,
284 F.R.D. 185 (S.D.N.Y. 2012) ............................................31

*Joint Anti-Fascist Refugee Comm. v. McGrath*,
341 U.S. 123 (1951).........................................................22

*Klipsch Grp. v. ePRO E-Com. Ltd.*,
880 F.3d 620 (2d Cir. 2018).................................... 18, 21, 36

*Koch Industries v. Does*,
No. 10-cv-1275, 2011 WL 1775765 (D. Utah, May 9, 2011) ......... 33, 34

*Kraft Foods Grp. Brands LLC v. Cracker Barrel Old Country Store, Inc.*,
735 F.3d 735 (7th Cir. 2013) ...............................................46

*Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*,
192 F.3d 337 (2d. Cir. 1999)................................................41

vii

*Lombardo v. Dr. Seuss Enters., L.P.*,
729 Fed. App'x 131 (2d Cir. 2018)............................................................57

*Louis Malletier, S.A. v. My Other Bag, Inc.*,
674 Fed. App'x 16 (2d Cir. 2016).............................................................59

*Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*,
507 F.3d 252 (4th Cir. 2007) ............................................................ 51, 59

*Louis Vuitton Malletier S.A. v. Warner Bros. Ent. Inc.*,
868 F. Supp. 2d 172 (S.D.N.Y. 2012) ............................................... 49, 59

*Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*,
156 F. Supp. 3d 425 (S.D.N.Y. 2016) ....................................................50

*M.B. # 11072-054 v. Reish*,
119 F.3d 230 (2d Cir. 1997)...................................................................17

*MCA, Inc. v. Wilson*,
677 F.2d 180 (2d Cir. 1981).....................................................................35

*Minnetonka Moccasin Co. v. Does 1-10*,
No. 22-cv-87, 2022 WL 1055746 (D. Minn. Apr. 8, 2022) ....................31

*Mirza v. Doe #1*,
No. 20-cv-9877, 2021 WL 4596597 (S.D.N.Y. Oct. 6, 2021) ...............31

*Mobil Oil Corp. v. Pegasus Petrol. Corp.*,
818 F.2d 254 (2d Cir. 1987)....................................................................45

*Morbitzer v. Doe*,
No. 21-cv-2038, 2021 WL 4273019 (D. Minn. Sept. 21, 2021) ............31

*Mut. of Omaha Ins. v. Novak*,
836 F.2d 397 (8th Cir. 1987) ........................................................... 39, 40

*N.Y. Stock Exch., Inc. v. N.Y., N.Y. Hotel, LLC*,
293 F.3d 550 (2d Cir. 2002)............................................................ 42, 43

*N.Y.C. Emps.' Ret. Sys. v. Dole Food Co.*,
969 F.2d 1430, (2d Cir. 1992)................................................................1, 2

*Nat'l Acad. of TV Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*,
551 F. Supp. 3d 408 (S.D.N.Y. 2021) ............................................. 43, 47

*NBA Props. v. Untertainment Records LLC*,
No. 99-CIV.-2933, 1999 WL 335147 (S.D.N.Y. May 16, 1999)...........42

*Nespresso USA, Inc. v. Africa Am. Coffee Trading Co.,*
No. 15-cv-5553, 2016 WL 3162118 (S.D.N.Y. June 2, 2016)...............54

*New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*,
704 F. Supp. 2d 305 (S.D.N.Y. 2010) ................................................44

*PACCAR Inc. v. TeleScan Techs, L.L.C.*,
319 F.3d 243 (6th Cir. 2003) ...........................................................54

*Paddington Corp. v. Attiki Imps. & Distribs. Inc.*,
996 F.2d 577 (2d Cir. 1993)............................................................45

*Paisley Park Enters. v. Ziani*,
No. 18-cv-2556, 2018 WL 6567828 (D. Minn. Dec. 13, 2018) .............30

*People for the Ethical Treatment of Animals v. Doughney*,
263 F.3d 359 (4th Cir. 2001) ...........................................................47

*Pfizer Inc. v. Sachs*,
652 F. Supp. 2d 512 (S.D.N.Y. 2009) ................................................42

*Planned Parenthood Fed'n of Am., Inc. v. Bucci*,
No. 97-cv-0629, 1997 WL 133313 (S.D.N.Y. Mar. 24, 1997) ....... 48, 57

*Platinum Props. Inv. Network, Inc. v. Does 1–2*,
No. 18-61907-CV, 2018 WL 7825045 (S.D. Fla. Nov. 19, 2018) .........30

*Polaroid Corp. v. Polaroid Elecs. Corp.*,
287 F.2d 492 (2d Cir. 1961)............................................................44

ix

*Protectmarriage.com v. Courage Campaign*,
680 F. Supp. 2d 1225 (E.D. Ca. 2010) ............................................. 50, 58

*Radiance Found., Inc. v. N.A.A.C.P.*,
786 F.3d 316 (4th Cir. 2015) ........................................................... 49, 58

*Road Dawgs Motorcycle Club of the U.S., Inc. v. Cuse Road Dawgs, Inc.*,
679 F. Supp. 2d 259 (N.D.N.Y. 2009) ...................................................45

*Rogers v. Grimaldi*,
875 F.2d 994 (2d Cir. 1989) ............................................................ 40, 56

*Ron Paul 2021 Presidential Campaign Committee v. John Does 1-10*,
No. 3:12-cv-00240 (N.D. Cal. Mar. 9, 2012) ................................... 34, 35

*S.R. Mercantile Corp. v. Maloney*,
909 F.2d 79 (2d Cir. 1990) .....................................................................1

*Safeway Stores, Inc. v. Safeway Props., Inc.*,
307 F.2d 495 (2d Cir. 1962) ..................................................................45

*SaleHoo Grp. v. ABC Co.*,
722 F. Supp. 2d 1210 (W.D. Wa. 2010) .................................................34

*Schenck v. United States*,
249 U.S. 47 (1919) .................................................................................39

*Signature Management Team LLC v. Doe*,
876 F. 3d 831 (6th Cir. 2017) ................................................................26

*Sony Music Entertainment Inc. v. Does 1-40*,
326 F. Supp. 556 (S.D.N.Y. 2004) ................................... 23, 26, 29, 39

*Specialty Brands, Inc. v. Coffee Bean Distribs., Inc.*,
748 F.2d 669 (Fed. Cir. 1984) ...............................................................46

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*,
588 F.3d 97 (2d Cir. 2009) ....................................................................46

*Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC*,
221 F. Supp. 2d 410 (S.D.N.Y. 2002) ....................................................51

*Twin Peaks Prods. Inc. v. Publ'ns Int'l, Ltd.*,
996 F.2d 1366 (2d Cir. 1993).................................................................57

*Union of Needletrades, Indus. & Textile Emps., AFL-CIO, CLC v. U.S. Immigr. & Nat'l Servs.*,
336 F.3d 200 (2d Cir. 2003)...................................................................25

*United States v. Bescond*,
24 F.4th 759 (2d Cir. 2021) .....................................................................3

*United States v. Hollywood Motor Car Co., Inc.*,
458 U.S. 263 (1982).................................................................................3

*United States v. Quintieri*,
306 F.3d 1217 (2d Cir. 2002)................................................................20

*United States v. Tenzer*,
213 F.3d 34 (2d Cir. 2000)....................................................................20

*United States v. U.S. Gypsum Co.*,
333 U.S. 364, 395 (1948).......................................................................36

*United States v. Uccio*,
940 F.2d 753 (2d Cir. 1991)..................................................................20

*United States v. Wilkerson*,
361 F.3d 717 (2d Cir. 2004)..................................................................25

*United We Stand Am., Inc. v. United We Stand, Am. N.Y., Inc.*,
128 F.3d 86 (2d Cir. 1997)....................................................................40

*Univ. of Alabama, Bd. Of Trustees v. New Life Art, Inc.*,
683 F.3d. 1266 (11th Cir. 2012) ...........................................................57

*Van Cauwenberghe v. Biard*,
486 U.S. 517 (1988)................................................................................4

xi

*Viken Detection Corp. v. Doe*,
No. 19-cv-12034, 2019 WL 5268725 (D. Mass. Oct. 17, 2019) ............................31

*VIP Prods. LLC v. Jack Daniel's Props., Inc.*,
953 F.3d 1170 (9th Cir. 2020) ........................................................................ 49, 58

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
956 F.2d 1245 (2d Cir. 1992)............................................................................ 19, 20

*Virgin Enters. Ltd. v. Nawab*,
335 F.3d 141 (2d Cir. 2003)............................................................................. 44, 45

*Washington v. Correia*,
546 Fed. App'x 786 (10th Cir. 2013) .....................................................................31

*Yankee Pub. Inc. v. News Am. Pub., Inc.*,
809 F. Supp. 267 (S.D.N.Y. 1992) .........................................................................40

*Ying Lin v. Holder*,
492 Fed. App'x 199 (2d Cir. 2012).........................................................................38

*Zdanok v. Glidden Co.*,
327 F.2d 944 (2d Cir. 1964).................................................................................20

*Zemskova v. Does 1-10*,
No. 21-cv-8393, 2022 WL 103571 (S.D.N.Y. Jan. 11, 2022)................................31

**Statutes**
15 U.S.C. § 1114(1) ................................................................................................44
N.Y. Penal Law §§ 265.00(22), 265.00(23), 265.02(7) & (8), 265.10.....................7

**Other Authorities**
H.R. Rep. No. 104-374, at 2 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 1029, 1030
........................................................................................................................43
Michael S. Vogel, *Unmasking "John Doe" Defendants*, 83 OR. L. REV. 795, 824
(Fall 2004) ......................................................................................................33

**Treatises**
18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4478.......20
McCarthy on Trademarks & Unfair Competition, § 23:11 (5th ed. 2019)..............54

# JURISDICTIONAL STATEMENT

## I. The Appeal Should Be Dismissed as Moot.

This appeal is moot given that the personal identifying information ("PII") ordered to be disclosed by the December 17, 2021 order (SPA.6-8)[1] ("Discovery Order") has already been produced pursuant to the District Court's November 5, 2021 ("Nov. 5 Order"), an order that is no longer appealable. *See* SPA.1-5; DKT 59 (order dismissing appeal).

"Under Article III of the Constitution, federal courts are empowered to adjudicate only actual, ongoing cases or controversies." *Del. Riverkeeper Network v. N.Y. State Dep't of Env't Conservation*, 788 Fed. App'x 65, 66 (2d Cir. 2019) (quoting *Deeper Life Christian Fellowship, Inc. v. Sobol*, 948 F.2d 79, 81 (2d Cir. 1991)). An action is moot "when the issues presented are no longer 'live' or the parties 'lack a legally cognizable interest in the outcome.'" *N.Y.C. Emps.' Ret. Sys. v. Dole Food Co.*, 969 F.2d 1430, 1433 (2d Cir. 1992) (quoting *Blackwelder v. Safnauer*, 866 F.2d 548, 551 (2d Cir. 1989)). Where a court cannot fashion some form of meaningful relief, the controversy is not live. *See id.* (citing, *inter alia*, *S.R. Mercantile Corp. v. Maloney*, 909 F.2d 79, 81 (2d Cir. 1990)). "A moot action

---

[1] "App. Br." refers to the Brief for Defendants-Appellants; "A" refers to the Appendix filed jointly by all parties; "SPA" refers to the Special Appendix; "ECF" refers to the District Court docket (S.D.N.Y. No. 21-cv-08704); and "DKT" refers to earlier filings in the instant appeal.

. . . must be dismissed, even if the case was live at the outset but later events rendered it moot on appeal." *Exxon Mobile Corp. v. Healey*, 28 F.4th 383, 392 (2d Cir. 2022) (citing *N.Y.C. Emps.' Ret. Sys.*, 969 F.2d at 1433); *see also Haley v. Pataki*, 60 F.3d 137, 141 (2d Cir. 1995). A case may become moot due to events occurring during the pendency of an appeal. *See N.Y.C. Emps.' Ret. Sys.*, 969 F.2d at 1433.

Here, following the Court's dismissal of Appellants' untimely appeal of the Nov. 5 Order, third parties, including Twitter, Inc. ("Twitter"), produced information regarding Appellants' PII. The Discovery Order on appeal now pertains only to the disclosure of Appellants' PII from third-party Twitter, which has already been produced pursuant to the Nov. 5 Order, which is no longer appealable. That bell cannot be unrung, and this subsequent appeal should be dismissed as moot, since no relief can be fashioned to undo the consequences of Appellants' failure to timely appeal the Nov. 5 Order.

## II. The Collateral Order Doctrine Does Not Provide a Basis for Immediate Appeal.

Appellants rely on the collateral order doctrine as the sole basis for jurisdiction over this appeal.[2] But the Discovery Order does not satisfy the

---

[2] Appellants invoked the collateral order doctrine as the only basis for this appeal (App. Br. at 2), thus Everytown does not address issues of finality or interlocutory appeals.

stringent requirements for application of the collateral order doctrine, which requires that the order under review (1) "conclusively determine the disputed question," (2) "resolve an important issue completely separate from the merits of the action," and (3) must be "effectively unreviewable on appeal from a final judgment." *United States v. Hollywood Motor Car Co., Inc.*, 458 U.S. 263, 265 (1982) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978)); *United States v. Bescond*, 24 F.4th 759, 766 (2d Cir. 2021). "All three of the requirements for appeal under the collateral order doctrine must be met; if any one is unsatisfied, the order is not immediately appealable . . . ." *Fischer v. N.Y. State Dep't of L.*, 812 F.3d 268, 274 (2d Cir. 2016) (citing cases) (denying jurisdiction).

The collateral order doctrine only applies in a limited number of cases and does not typically apply to interlocutory discovery orders like the one at issue in this case. *See Chase Manhattan Bank, N.A. v. Turner & Newall, PLC*, 964 F.2d 159, 162–63, 166 (2d Cir. 1992) (dismissing appeal of discovery order for lack of jurisdiction); *Am. Express Warehousing, Ltd. v. Transamerica Ins. Co.*, 380 F.2d 277, 280 (2d Cir. 1967) (explaining the collateral order doctrine allows "immediate appeal in only a 'small class' of cases, a term hardly descriptive of the number of cases raising discovery questions"). In this case, the Discovery Order does not meet at least two of the requirements necessary to invoke the collateral order

3

doctrine, because it (1) does not conclusively determine a disputed question; and (2) does not resolve an issue completely separate from the merits of the case.

First, the Discovery Order does not conclusively determine any disputed question. The question of whether Appellants' PII should be disclosed was already conclusively determined by the District Court's Nov. 5 Order. The District Court determined the PII discovery should be disclosed within the Nov. 5 Order, the PII has been disclosed pursuant to the Nov. 5 Order, and Appellants' appeal of the Nov. 5 Order was already dismissed by this Court and is now the law of the case. DKT 59.

Second, the Discovery Order is not "collateral" because it does not resolve an issue that is completely separate from the merits of the action. Instead, the Discovery Order required Appellants' PII be produced to evaluate personal jurisdiction, which has been challenged by Appellants and relates to the merits of the case. *See* A.457-458 ("The discovery sought by Plaintiff – and ordered by this Court – is critical to, inter alia, the issue of personal jurisdiction raised by Defendants.") (citing cases); *see Gen. Motors Co. v. Gibson Chem. & Oil Corp.*, 786 F.2d 105, 108 (2d. Cir. 1986) (rejecting invocation of collateral order doctrine and determining seizure order was not separate issue because court considered likelihood of success on the merits of trademark infringement claim before issuing seizure order); *see also Van Cauwenberghe v. Biard*, 486 U.S. 517, 518 (1988)

4

(finding order relating to *forum non conveniens* arguments not completely separate from the merits of the action); *see, e.g.*, *Jefferson v. Delgado Cmty. Coll. Charity Sch. of Nursing*, 602 Fed. App'x 595, 598 (5th Cir. 2015) (rejecting collateral order jurisdiction involving personal jurisdiction challenge).

While in some instances, orders requiring disclosure of a party's PII may be appealable under the collateral order doctrine, those instances are not present in this case where the District Court has stated that it requires the ordered discovery to evaluate the personal jurisdiction challenge raised by Appellants. *See, e.g.*, *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010) (reviewing appeal of discovery order where appeal related to procedural challenges and challenges of fair use, not involving an alleged personal jurisdiction challenge). Because the Discovery Order does not satisfy all elements required by the collateral order doctrine, the appeal should be dismissed for lack of jurisdiction.

## STATEMENT OF ISSUES

1.     Should the Court dismiss this appeal as moot where the discovery at issue has already been produced pursuant to the Nov. 5 Order, an order that was the subject of an appeal dismissed as untimely by this Court?

2.     Should the Court dismiss this appeal for lack of jurisdiction under the collateral order doctrine where the Discovery Order is a pre-trial interlocutory discovery order that (1) does not conclusively determine any disputed question and

5

(2) does not resolve an issue completely separate from the merits of the action?

3.      Should this Court uphold the standard articulated in *Arista* for discovery involving the identity of anonymous intellectual property infringers where (1) Appellants have not articulated any intervening Supreme Court decision that has changed the legal landscape applied in *Arista*, and (2) no intervening decisions by other courts or considerations cast doubt upon whether *Arista* was properly decided?

4.      Did the District Court act within its discretion issuing the Discovery Order where the Appellants had notice and objected in advance of the Order, the Order addressed Federal Rule of Civil Procedure 45, and the District Court considered, applied, and ruled on each of the *Arista* factors based on record evidence?

## PRELIMINARY STATEMENT

This appeal involves Appellants' continued efforts to thwart discovery that has been ordered repeatedly by the District Court and that was the subject of a prior petition for *writ* of mandamus, which the Court denied, and a prior appeal, which the Court dismissed as untimely. In this latest appeal, Appellants challenge a discovery order stipulated to by Twitter involving a subset of materials that were the subject of a prior petition and appeal and with which Twitter has already complied. The appeal should be dismissed on jurisdictional bases, and/or the

6

discovery order affirmed under the law of the case and as easily within the District Court's discretion.

As explained in prior submissions to this Court, Everytown applied for a preliminary injunction in October 2021 to stop the Appellants from selling and distributing downloadable files for the manufacture of 3-D printed gun parts and accessories, bearing identical copies of Everytown's federally registered trademarks (hereinafter "Infringing Products"). The Infringing Products can be used to make assault weapons and high-capacity magazines, which are illegal in New York, among other states. *See, e.g.*, N.Y. Penal Law §§ 265.00(22), 265.00(23), 265.02(7) & (8), 265.10.  Appellants' conduct irreparably harms Everytown, actively tarnishes the federally registered Everytown Marks, and is likely to cause confusion.

Based on evidence submitted by Everytown in support of its claims, including sworn declarations, the District Court ordered basic, preliminary discovery of PII in order to proceed with the litigation. *See* SPA.1-5.  Instead of complying with the Nov. 5 Order, the Appellants sought multiple stays with this Court, which were ultimately denied, but delayed Everytown's request for a preliminary injunction for nearly five months. DKT 59. The only issue remaining in this appeal involves the Discovery Order (SPA.6-8), a pre-trial interlocutory order requiring the disclosure of Appellant's PII from third-party Twitter, with

7

which Twitter has already complied and which, respectfully, should be affirmed.

The Appellants' continued efforts to stay production of PII and hide behind the First Amendment, to engage in blatant trademark infringement and dilution by tarnishment, should be rejected again under this Court's precedent. Since 2010, the *Arista* standard applied by the District Court in ordering production has been the "appropriate general standard" for a court to consider whether to preserve the objecting party's anonymity. *Arista*, 604 F.3d at 117. Appellants have not identified any intervening law that casts doubt upon this Court's prior precedent in *Arista* or warrants this panel to disregard *stare decisis*.

The District Court properly applied the *Arista* factors to the record facts, finding that: (1) Everytown made a *prima facie* showing of actionable harm, (2) the expedited discovery ordered was narrowly tailored, (3) Everytown has not been able to obtain the information from another source, (4) Everytown could not advance its claims without the information ordered for production; and (5) Appellants' limited expectation of privacy was outweighed by Everytown's need for the PII. Discovery Order, SPA.6-7. The District Court's findings were supported by the record, including Everytown's sworn declarations demonstrating that Appellants – who Everytown has been unable to identify – are using identical copies of Everytown's federally registered trademarks in connection with the promotion, sale, and distribution of 3-D gun parts and accessories in violation of

the Lanham Act and New York state law. This appeal should be dismissed on

jurisdictional bases and/or the Discovery Order affirmed on the merits.

## STATEMENT OF THE CASE

### 1. Facts Pertaining to Everytown's Claims.

Everytown brought the instant complaint for Lanham Act infringement and

dilution by tarnishment under New York Business Law Section 360-l to stop

Appellants' advertisement, promotion, and distribution of the Infringing Products

bearing registered Everytown Marks.[3] The Everytown Marks consist of both word

and design marks, including word marks for "EVERYTOWN" and "MOMS

DEMAND ACTION," and stylized design marks such as:



Everytown uses the Everytown Marks in connection with a number of goods

and services, including providing electronic downloadable publications concerning

firearm safety matters. *See, e.g.*, A.81, A.89, A.96, A.99, A.104. A side-by-side

comparison showing one of the Everytown Marks and a rendering that Appellant

---

[3] The "Everytown Marks" consist of United States Patent and Trademark Office
("USPTO") registration numbers 5142124, 5092082, 5223511, 5142128, 5142125,
5142126, 5092083, 6213804, 4569205, 5092084, and 5151549. A.81-A.109
(attaching registration certificates); A.149-A.152.

Defcad, Inc. created for the sale and distribution of one of the Infringing Products is depicted below:

| Everytown Mark Reg. No. 5151549 (A.107) | Appellants' Rendering of an Infringing Product (A.180) |
|---|---|
|  |  |

Appellants are advertising, promoting, and distributing the Infringing Products online through various websites, including www.defcad.com, which is owned/operated by Appellant Defcad, Inc. ("Defcad"), www.odysee.com ("Odysee"), www.twitter.com ("Twitter"), and www.ctrlpew.com ("Ctrl+Pew"), (together, www.defcad.com, www.odysee.com, www.twitter.com, and www.ctrlpew.com, collectively "Online Platforms"). *See* A.155-A.160. Appellants' listings for the Infringing Products on the Online Platforms use identical versions of the Everytown Marks as source identifiers for the Infringing Products in the product names and descriptions, in renderings of the firearms and accessories produced with the Infringing Products, and in keyword search tags for the Infringing Products on the Online Platforms. *See* A.161-175; ECF 1-9. An example of Appellants' Infringing Product listings displaying the Everytown

Marks is depicted below (*see* A.166):





Through Appellants' listings on Online Platforms, they have received

monetary compensation from the Infringing Products by:

- Appellant Defcad charging a subscription fee to download the Infringing Products on www.defcad.com (A.156; A.159; A.367; A.393);

- charging a fee for downloading individual Infringing Products on www.defcad.com (A.367-A.368; A.395);

- obtaining monetary tips in connection with downloads of the Infringing Products on Odysee (A.371);

- Appellant Phillip Royster soliciting funds through Twitter, where he has advertised the Infringing Products, by providing a link to donate to his PayPal account (A.183-185); and

- Appellant Defcad User Freeman1337 soliciting donations through Ctrl+Pew as the "Creator of the Everytown Mag", one of the Infringing Products (ECF 101, at *7, *13).

Using the Online Platforms, Appellants acted semi-anonymously through usernames, which appeared unrelated to their legal names. A.151. As such, Everytown was not able to obtain identifying information or verify names and/or emails regarding the Appellants. *Id.* Appellants' conduct in connection with the Infringing Products (parts and accessories for assault weapons, high-capacity magazines, and ghost guns) is contrary to the Everytown core mission and is harmful to Everytown's reputation and the Everytown Marks. *See* A.203.

Appellants' conduct actively tarnishes the Everytown Marks given the firearm parts and accessories that may be printed using the Infringing Products are—when combined with other parts (to make assault weapons) or on their own (high-capacity magazines)—illegal in New York, among other states. *See, e.g.*, N.Y. Penal Law §§ 265.00(22), 265.00(23), 265.02(7), (8), 265.10. As a result, Everytown sought preliminary injunctive relief, and expedited discovery of basic PII about the Appellants for purposes of serving process and to litigate its claims. ECF Nos. 13-18. The District Court granted Everytown's request for expedited discovery regarding Appellants' PII on November 5, 2021. Nov. 5 Order, SPA.1-5.

### 2. Procedural History Relating to the Discovery Order.

Appellants sought an immediate stay of the expedited discovery required by the Nov. 5 Order to avoid revealing their identities. *See* Defendants' Emergency Letter Motion to Stay (A.209-211); Letter Response in Support of Motion (A.212); and Defendants' Brief in Further Support of Emergency Letter Motion for Stay (A.213-219).

On November 9, 2021, the District Court denied Appellants' stay request. *See* A.220-223 ("Nov. 9 Order"). The Nov. 9 Order expressly discussed the Appellants' Emergency Letter Motion to stay discovery and the two supplemental letters submitted in support of the stay motion. *See* A.221. The Nov. 9 Order also addressed Appellants' arguments and made findings under *Arista*. A.222-223.

13

Appellants then filed with this Court an emergency motion to stay the Nov. 5 Order along with a Petition for Writ of Mandamus ("Petition"), seeking to stay the Nov. 5 Order, and the Nov. 9 Order. *See In re Defcad*, No. 21-2806, ECF 1, 3, 5, and 6. Everytown opposed Appellants' emergency motion to stay (No. 21-2806, ECF 13), and the Court administratively stayed the action pending disposition by a three-judge panel. A.224.

This Court also allowed *amicus curiae*, the Electronic Frontier Foundation ("EFF") to submit a brief. No. 21-2806, ECF 28, 27. As advocated by Appellants in this appeal, EFF advocated a standard for "unmasking anonymous online speakers" that deviates from the law set forth in *Sony Music Entertainment Inc. v. Does 1-40*, 326 F. Supp. 2d 556 (S.D.N.Y. 2004), later approved in *Arista*, and applied by the District Court in this case. *See* No. 21-3079 (ECF 8), at *78.

On November 23, 2021, the Court denied Appellants' Petition, and motion to stay the Nov. 5 Order. A.455. The Court found that Appellants had not demonstrated that their right to a *writ* of mandamus was clear and indisputable. A.455.

Following the Court's rejection of Appellants' efforts to reverse the Nov. 5 Order, on December 14, 2021, the District Court issued an Order adjourning a previously scheduled preliminary injunction hearing and ordering Appellant Defcad to "submit a letter by 5:00 p.m. on December 15, 2021, stating whether it

intends to comply – forthwith – with this Court's November 5, 2021 order." A.458. The December 14, 2021 Order also noted that, "[i]nstead of obeying this Court's November 5, 2021 order, Defendants have submitted anonymous, unsigned declarations (Dkt. Nos. 56-3, 56-4, and 56-5) that are of no evidentiary worth." A.457-458.

On December 15, 2021, pursuant to the Nov. 5 Order, Everytown and third-party Twitter filed a proposed order and stipulation for the discovery of Appellants' PII from Twitter. A.459-464. Later that same day, Appellants submitted a letter stating, "Defcad intends to comply forthwith with the [Nov. 5 Order]." ECF 70, at *1. Later that night, Appellants changed course and submitted a "Response to Motion re 44 Third Party Motion for Discovery Order re Modification Objection to Proposed Order . . . ." ECF 71. The Appellants' "objections" restated the same, already rejected arguments that the District Court relied on the "wrong standard" concerning "unmasking" by following *Arista. See* ECF 71, at *3.

On December 17, 2021, the District Court issued the Discovery Order (that is the subject of this appeal), approving the Twitter stipulation and again ruling that Everytown's "request for expedited discovery satisfies the factors articulated by the Second Circuit in *Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010) . . . .'" SPA.6. The District Court again evaluated each of the *Arista* factors and

required Twitter to produce basic PII regarding the Appellants by December 24th. SPA.6-8.

On December 18, 2021, Appellants filed yet another Emergency Letter Motion with the District Court seeking a stay of the Discovery Order pending another purported appeal. On December 21, 2021, Appellants filed with this Court the instant appeal along with another motion for emergency stay challenging the Nov. 5 Order (which was the subject of the prior Petition) and the Discovery Order. A.475.

On December 22, 2021, Everytown submitted an opposition to Appellants' request for an emergency stay on the basis that this Court did not have jurisdiction over Appellants' appeal, and that the District Court did not abuse its discretion in issuing either the Nov. 5 Order or the Discovery Order. DKT 17. The Court again ordered an administrative stay of the expedited discovery orders pending disposition of Appellants' emergency motion by a three-judge panel.

On April 5, 2022, the Court denied Appellants' emergency motion to stay the Nov. 5 Order and Discovery Order finding that the Appellants had not demonstrated a stay was warranted. *See* DKT 59. The Court also dismissed Appellants' appeal of the Nov. 5 Order as untimely. *See* DKT 59.

Thus, the only issue remaining in this appeal involves Appellants' challenge to the Discovery Order. Because Appellants' appeal as to the Nov. 5 Order has

already been dismissed, Everytown does not address Appellants' challenges to that Order in this brief.

## STANDARD OF REVIEW

To the extent this appeal is not dismissed on jurisdictional grounds, the standard of review relating to the Discovery Order is abuse of discretion. *Arista*, 604 F.3d at 117 (citing *In re Subpoena Issued to Friedman*, 350 F.3d 65, 68 (2d Cir. 2003)); *see also First City, Texas-Houston, N.A. v. Rafidain Bank*, 150 F.3d 172, 176 (2d Cir. 1998) (reviewing order granting or denying discovery under abuse of discretion standard). A "trial court enjoys wide discretion in its handling of pre-trial discovery, and its rulings with regard to discovery are reversed only upon a clear showing of an abuse of discretion." *M.B. # 11072-054 v. Reish*, 119 F.3d 230, 232 (2d Cir. 1997) (quoting *Cruden v. Bank of N.Y.*, 957 F.2d 961, 972 (2d Cir. 1992)).

## SUMMARY OF ARGUMENT

Everytown respectfully requests that Appellants' appeal be dismissed because (1) the issues raised in Appellants' appeal are moot, as the Discovery Order requires the disclosure of PII from Twitter that was already produced pursuant to the Nov. 5 Order; and (2) the Court does not have jurisdiction over the

appeal of the Discovery Order pursuant to the collateral order doctrine, or any statute.

Further, even if the Court finds that it has jurisdiction over this appeal, the Court should affirm the Discovery Order as properly within the District Court's discretion.  A District Court abuses its discretion only "if it (1) bases its decision on an error of law or uses the wrong legal standard; (2) bases its decision on a clearly erroneous factual finding; or (3) reaches a conclusion that, though not necessarily the product of a legal error or a clearly erroneous factual finding, cannot be located within the range of permissible decisions." *Klipsch Grp. v. ePRO E-Com. Ltd.*, 880 F.3d 620, 627 (2d Cir. 2018) (quoting *EEOC v. KarenKim, Inc.*, 698 F.3d 92, 99–100 (2d Cir. 2012) (internal quotation marks omitted)). None of those factors are present here.

First, the Discovery Order complied with procedural due process requirements. Appellants had notice of the request for discovery, and a meaningful opportunity to be heard, including through the written objection they submitted prior to issuance. This process was more than sufficient here, given the civil nature of the case, the previous orders issued regarding the same discovery, and the urgent need for the discovery.

Second, the Discovery Order was not an abuse of discretion because (1) the District Court applied *Arista*, the correct legal standard governing the expedited

18

discovery sought; (2) the District Court's findings of fact were not clearly erroneous; and (3) the discovery was within the range of permissible decisions. As this Court has made clear, *Arista* is the "appropriate general standard" and Appellants have not put forth any justifiable basis for not applying *Arista* to the instant discovery dispute.

Third, Appellants do not have an unfettered right to anonymously infringe upon Everytown's registered trademarks under the guise of the First Amendment. The law and facts are clear that Appellants' use of identical versions of Everytown's trademarks as source identifiers in connection with the Infringing Products is not permissible under New York law and the Lanham Act.

Because the Court lacks jurisdiction over this appeal and the District Court did not abuse its discretion, Everytown respectfully requests that the Court dismiss this appeal and affirm the Discovery Order.

## ARGUMENT

### I. The Discovery Order Should be Affirmed Under the Law-of-the-Case Doctrine.

Appellants' repeated attempts to litigate the same issues without cause favors denial of Appellants' appeal under the law-of-the-case doctrine. "[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotations

19

omitted) (quoting *Zdanok v. Glidden Co.*, 327 F.2d 944, 953 (2d Cir. 1964), *cert. denied*, 377 U.S. 934 (1964)). "The law of the case doctrine has two branches. The first requires a trial court to follow an appellate court's previous ruling on an issue in the same case." *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002) (citing *United States v. Uccio*, 940 F.2d 753, 757 (2d Cir. 1991)).

The second is implicated "where a court reconsiders its own ruling on an issue in the absence of an intervening ruling on the issue by a higher court. It holds 'that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case,', unless 'cogent' and 'compelling' reasons militate otherwise." *Quintieri*, 306 F.3d at 1225 (first quoting *Uccio*, 940 F.2d at 758; and then quoting *United States v. Tenzer*, 213 F.3d 34, 39-40 (2d Cir. 2000)). "The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways*, 956 F.2d at 1255 (quoting 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4478 at 790) (internal quotes omitted).

"The law of the case will be disregarded only when the court has 'clear conviction of error' with respect to a point of law on which its previous decision was predicated." *Fogel v. Chestnutt*, 668 F.2d 100, 109 (2d Cir. 1981) (citing cases) (denying appeal under law of the case doctrine). Where no "new evidence"

or "any relevant intervening change in law" is articulated, courts have denied attempts to re-litigate settled issues. *See, e.g.*, *Gulino v. Bd. Of Educ. of N.Y.C. Sch. Dist. of N.Y.*, 555 Fed. App'x 37, 39–40 (2d Cir. 2014) (upholding law of the case).

Here, Appellants have not articulated any new evidence, change in law, or other cogent or compelling reason why this Court should revisit the issues already decided. Appellants have already challenged the Nov. 5 Order within their Petition and attempted to raise arguments why it was improper, including the same arguments they bring here – that the Court should abandon its precedent in *Arista* in favor of adopting New Jersey state law in *Dendrite*, and that Appellants' alleged First Amendment rights outweigh the need for discovery of their PII. Civ. No. 21-2806, Dkt. 3, at *14-*15). This Court denied the Petition, finding that the Appellants had not demonstrated that their right to any relief was clear and indisputable. A.455. By denying the Petition (and finding no clear and indisputable issue) the Court found no error in the Nov. 5 Order requiring the disclosure of PII, and the District Court's application of *Arista* was the correct legal standard. Thus, the Discovery Order should be affirmed as applying the law of the case.

## II. The District Court Did Not Abuse Its Discretion in Issuing the Discovery Order.

The District Court's Discovery Order was not an abuse of discretion, as it did not violate due process and complied with the governing precedent set forth in *Arista*. *See Klipsch Grp.*, 880 F.3d at 627.

### a. The Discovery Order Was Procedurally Proper.

"'[D]ue process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances . . . ." *Cafeteria & Rest. Workers Union, Loc. 473, AFL-CIO v. McElroy*, 367 U.S. 886, 895 (1961) (citing *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 162–63 (1951) (Frankfurter, J., concurring)). In civil actions, oral hearings are not always required for due process to be satisfied. *See, e.g.*, *Greene v. WCI Holdings Corp.*, 136 F.3d 313, 316 (2d Cir. 1998) (affirming dismissal of complaint without oral hearing).

Here, Appellants had ample opportunity to object to the Discovery Order. In fact, at the time that Twitter and Everytown filed the proposed stipulation regarding discovery on December 15, 2021 (ECF 69), counsel for the Appellants had appeared in the matter several weeks prior and received notice of the stipulation. Appellants filed an objection to the stipulation that same day. *See* ECF 71. On December 17, 2021, the District Court issued the Discovery Order over Appellants' objections, requiring Twitter to produce "basic subscriber information of the anonymous defendants contained in Twitter's records, specifically: any names, telephone numbers, email addresses, and dates of birth provided by the registrant / user(s) of the Account(s)." SPA.7. The Discovery Order also specifically invoked Federal Rule of Civil Procedure 45, stating that if Everytown sought "further discovery from Twitter in this case, it must seek such discovery by

22

Federal Rule of Civil Procedure 45 subpoena." SPA.8. Thus, Appellants'

arguments that the Discovery Order was issued "ex parte," "without notice," and

without Rule 45 protections are meritless.

### b. The District Court Acted Within Its Discretion Applying *Arista*.

In *Arista*, this Court weighed a defendant's alleged First Amendment right to

remain anonymous against an intellectual property owner's right to disclosure of

the identity of an alleged infringer. In doing so, the Court adopted the five-factor

test set out in *Sony Music Entertainment Inc. v. Does 1-40*, 326 F. Supp. 556

(S.D.N.Y. 2004) over other potential tests. The factors evaluated in *Sony* were as

follows:

> (1)    [the] concrete[ness of plaintiff's] showing of a prima facie claim of actionable harm, . . .
>
> (2)    the specificity of the discovery request, . . .
>
> (3)    the absence of alternative means to obtain the subpoenaed information, . . .
>
> (4)    [the] need for the subpoenaed information to advance the claim, . . . and
>
> (5)    the [objecting] party's expectation of privacy."

*Arista,* 604 F.3d 110, 119 (quoting *Sony*, 326 F. Supp. 2d at 564–65). In adopting

this standard, the Court expressly stated, "[w]e agree that this constitutes *an*

*appropriate general standard for determining whether a motion to quash, to*

*preserve the objecting party's anonymity, should be granted." Id.* (emphasis

23

added). Thus, the Court plainly did not limit application of this standard to copyright infringement cases.

Appellants fail to articulate why this Court should disregard its established precedent under *Arista*, how copyright infringement cases are different than trademark infringement cases for purposes of this expedited discovery analysis, or how the district court's analysis under *Arista* was improper. Appellants cite no law within the Second Circuit indicating why *Arista* is "not the correct standard to apply here," or why this Court should disregard its own previous rulings to adopt the standard articulated in *Dendrite International, Inc. v. John Doe*, 342 N.J. Super. 134 (App. Div. 2001) (hereinafter "*Dendrite*"). Indeed, Appellants already proposed the *Dendrite* standard in their Petition for Writ of Mandamus to this Court, which was denied. *See In re Defcad*, No. 21-2806, ECF 1, 3, 5, and 6. As set forth below, there is simply no reason or basis for the Court to disregard its established precedent, which the District Court correctly followed in issuing the Discovery Order.

### i. *Arista* **is the Correct Standard.**

The District Court properly applied *Arista* as: (1) *Arista* is governing precedent in this Circuit concerning expedited discovery of anonymous individuals and Appellants have not raised any decisions casting doubt upon its applicability; and (2) Appellants have not articulated any reason why *Arista* should not apply in

trademark cases when *Arista* was not limited to copyright matters, but is a "general standard" for determining whether an objecting party's anonymity should be preserved.

### 1. Appellants Have Not Put Forth Any Authority Warranting Deviation from *Arista*, or *Stare Decisis*.

A panel is "bound by the decisions of prior panels until such time as they are overruled either by an *en banc* panel of our Court or by the Supreme Court." *In re Zarnel*, 619 F.3d 156, 168 (2d Cir. 2010) (quoting *United States v. Wilkerson*, 361 F.3d 717, 732 (2d Cir. 2004)). Generally, this Court only reconsiders its prior decisions when (1) an intervening Supreme Court decision changes the legal landscape and the prior decision would likely have been decided differently had the issue arisen after the Supreme Court provided its further guidance, or (2) when intervening decisions by other courts cast doubt upon whether the prior decision was rightly decided in the first place. *Id*. at 168 (citing *Gelman v. Ashcroft*, 372 F.3d 495, 499 (2d Cir.2004) (quoting *Union of Needletrades, Indus. & Textile Emps., AFL-CIO, CLC v. U.S. Immigr. & Nat'l Servs.*, 336 F.3d 200, 210 (2d Cir. 2003) ) (internal quotation marks omitted)). Neither scenario is present here.

First, Appellants do not identify any applicable intervening Supreme Court decision that has been issued after *Arista*, let alone one that would change the legal landscape creating reason to re-evaluate *Arista*. *See generally* App. Br. (citing no Supreme Court decisions after 2010).

25

Second, Appellants do not identify any intervening decisions from sister circuits after *Arista* that would cast doubt upon whether the decision was correctly decided. Indeed, the Court in *Arista* adopted the *Sony* factors, which explicitly referenced and considered *Dendrite*. *See Sony*, 326 F. Supp. 2d 556, 564–65. None of the decisions cited by Appellants from sister circuits concerning anonymity cast doubt on the propriety of *Arista*.

For instance, *Signature Management Team LLC v. Doe*, 876 F. 3d 831 (6th Cir. 2017), is consistent with this Court's application of *Arista*. In *Signature*, the Sixth Circuit evaluated whether a blogger could remain anonymous in a copyright infringement action, ultimately remanding the case to the district court. In its decision, the court noted that the case at hand was different than previous cases – such as *Sony* – as the court was tasked with weighing the discovery of information *post judgment*, a scenario where the discovery sought was not relevant to the merits of the action. Even in that context, the court did not require implementation of the *Dendrite* factors, and found that "speech is not entitled to First Amendment protection to the extent that it constitutes copyright infringement[,]" noting with regard to enforcement of intellectual property rights that, "a plaintiff who obtains an ongoing remedy such as a permanent injunction will have a strong interest in unmasking an anonymous defendant." *Signature*, 876 F.3d at 837–38. On remand, the court required the district court to "weigh the factors favoring anonymity

26

against the public's interest in open proceedings in general and in this particular copyright infringement lawsuit, as well as the plaintiff's interest in unmasking Doe[]"– all of which is consistent with *Arista*. *Id*. at 838.

Likewise, in *In re Anonymous Online Speakers*, 661 F.3d 1168, 1177–78 (9th Cir. 2011), a case involving claims of tortious interference, the Ninth Circuit found that discovery of the identities of non-party online speakers did not offend the First Amendment and denied the petitioner's request for writ of mandamus. As in *Arista*, the Ninth Circuit discussed balancing the value of anonymous speech against a party's need for the relevant discovery in a civil action. *In re Anonymous* also declined to fashion a specific test for the disclosure of the identity of the anonymous speakers – and noted that the *prima facie* showing standard adopted by *Sony* (and subsequently in *Arista*), was more protective of anonymity than standards applied by other courts in similar discovery situations. *See id*. at 1176 (citing cases and discussing how "[t]he lowest bar that courts have used is the motion to dismiss or good faith standard").

The case of *Doe v. Harris*, 772 F.3d 563 (9th Cir. 2014), similarly does not call into doubt this Court's reasoning in *Arista*, as the facts and circumstances in that case are not analogous. *Doe* pertains to a First Amendment challenge to the Californians Against Sexual Exploitation ("CASE") Act brought by sex offenders "to comment on news articles, forums, and blogs." *Id*. at 569. The plaintiffs in that

27

action sought a preliminary injunction seeking to halt administration of the CASE Act, which would have required them to send written notice to law enforcement agencies if they changed their account(s) with an internet service provider or added an internet service provider. The Ninth Circuit affirmed the finding that the CASE Act should be enjoined given its requirements, but did not evaluate any intellectual property infringement and did not weigh an instance of speech that was unlawful. In other words, *Doe* evaluates a different factual scenario that has nothing to do with this case, *Arista*, or *Dendrite*.

Lastly, the Appellants cite *Defense Distributed v. United States Department of State*, 838 F.3d 451 (5th Cir. 2016). In that case, Appellant Defcad, Inc.'s parent organization Defense Distributed, filed suit challenging the Arms Export Control Act ("AECA") alleging rights under the First Amendment and Second Amendment concerning the distribution of downloadable 3-D firearms. The Fifth Circuit found against Defense Distributed and held that the public interest in enforcing the AECA outweighed the plaintiff's claimed interests. The Fifth Circuit expressly stated that it took no position as to various issues – including whether "3D printing and/or CNC milling files at issue here may constitute protected speech under the First Amendment." *Def. Distributed*, 838 F.3d at 461. Unlike *Arista* or this matter, the case did not concern unmasking or intellectual property infringement.

28

Accordingly, *Defense Distributed* has no bearing on *Arista*, which does consider the First Amendment rights of anonymous individuals along with other interests.

Thus, Appellants have not identified any intervening decisions warranting deviation from this Court's established precedent in *Arista*, which the District Court properly relied upon in issuing the Discovery Order.

## 2. The *Arista* Standard Has Been Applied Outside of the Copyright Context.

Appellants have also failed to justify applying a different standard to trademark infringement cases than the "appropriate general standard" applied in *Arista* for purposes of evaluating expedited discovery concerning a defendant's identity.

The closest Appellants come to attempting to distinguish trademark infringement actions from the copyright infringement allegations in *Arista* is the assertion that "*Arista Records* and *Sony Music* are not about speech or expression but about simple theft of intellectual property." App. Br. at *4, *17, *25. But *Sony* specifically considered if the defendants' conduct – downloading and making defendants' copyrighted music available to others without charge – constitutes as speech under the First Amendment. *Sony*, 326 F. Supp. 2d at 564. It then balanced the defendants' First Amendment rights of expression against the rights of the copyright holder among other considerations, ultimately finding in favor of disclosure of the defendants' identities. *Id*. at 565–67.

29

Appellants make similar sweeping misstatements that courts around the country apply "a more rigorous test" than *Arista* in trademark contexts. App. Br. at *42. Courts routinely weigh First Amendment anonymity interests against the need for discovery in trademark infringement actions without applying the *Dendrite* factors advocated by Appellants. *See Platinum Props. Inv. Network, Inc. v. Does 1–2*, No. 18-61907-CV, 2018 WL 7825045, at *3 (S.D. Fla. Nov. 19, 2018) (denying motion to stay discovery in trademark infringement case, finding that whatever limited First Amendment interest in privacy or anonymity defendants may have is overcome by the plaintiffs' need to obtain identifying information to pursue the litigation); *Paisley Park Enters. v. Ziani*, No. 18-cv-2556, 2018 WL 6567828, *3 (D. Minn. Dec. 13, 2018) (applying *Arista* in case involving both copyright and trademark infringement claims); *Assef v. Does 1-10*, No. 15-cv-01960, 2015 WL 3430241, *3 (N.D. Cal. May 28, 2015) (granting plaintiff's *ex parte* application for expedited discovery in action involving trademark and defamation claims, finding need for basic discovery information such as the defendants' names, addresses, telephone numbers, and email addresses to advance the lawsuit); *Bloomberg, L.P. v. John Does 1-4*, No. 13-cv-01787, 2013 WL 4780036, *3 (S.D.N.Y. June 26, 2013) (applying *Arista* factors and denying motion to quash discovery in trademark infringement, unfair competition, and dilution case involving anonymous defendants); *John Wiley & Sons, Inc. v. Doe*

30

*Nos. 1-30*, 284 F.R.D. 185, 189–191 (S.D.N.Y. 2012) (applying *Arista* to case involving both copyright and trademark claims).

Courts have also applied the *Arista* factors to causes of action unrelated to copyright or trademark infringement. *See Washington v. Correia*, 546 Fed. App'x 786, 787 (10th Cir. 2013) (affirming application of *Arista* factors in case involving breach of contract and fraud claims); *Minnetonka Moccasin Co. v. Does 1-10*, No. 22-cv-87, 2022 WL 1055746, *3 (D. Minn. Apr. 8, 2022) (applying same factors as *Arista* in breach of contact action); *Morbitzer v. Doe*, No. 21-cv-2038, 2021 WL 4273019, *2 (D. Minn. Sept. 21, 2021) (applying *Arista* to case involving Computer Fraud and Abuse Act claim); *Viken Detection Corp. v. Doe*, No. 19-cv-12034, 2019 WL 5268725, at *1–2 (D. Mass. Oct. 17, 2019) (applying *Sony* to expedited discovery involving Computer Fraud and Abuse Act and Stored Communications Act claims); *Ensor v. Does 1-15*, No. A-19-cv-00625, 2019 WL 4648486, at *2–3 (W.D. Tex. Sept. 23, 2019) (applying *Sony* to defamation claims); *Indigital Sols., LLC v. Mohammed*, No. H-12-2428, 2012 WL 5825824, at *2–4 (S.D. Tex. Nov. 15, 2012) (applying same factors as *Arista* to evaluate expedited discovery of anonymous individuals in consumer fraud and abuse case); *see also Zemskova v. Does 1-10*, No. 21-cv-8393, 2022 WL 103571, at *1 (S.D.N.Y. Jan. 11, 2022) (applying *Arista* to defamation claim); *Mirza v. Doe #1*, No. 20-cv-9877, 2021 WL 4596597, at *5–9 (S.D.N.Y. Oct. 6, 2021) (applying

31

*Sony* to defamation claim).

The cases cited by Appellants concerning trademark infringement actions are inapposite. For instance, *Highfields Capital Management L.P. v. Doe*, 385 F. Supp. 2d 969 (N.D. Cal. 2005), a case decided before *Arista*, involved a dubious claim of trademark infringement related to content posted on an internet message board that was critical of the plaintiff's investment strategy, and contained disclaimers stating that the message board was not affiliated with the plaintiff. The *Highfields* court noted that a "real evidentiary basis for believing that the defendant has engaged in wrongful conduct that has caused real harm to the interests of the plaintiff" must be present in order to proceed with discovery of the defendant's identities and specifically stated that *Sony* "require[s] such a showing." *Id*. at 970. The court ultimately quashed the subpoena based on the plaintiff's failure to provide any support for its trademark infringement claims, unlike this case. *Id*. at 971. Here, Everytown submitted multiple sworn declarations in support of its claims and request for preliminary injunctive relief and expedited discovery. *See* A.149-A.203; A.362-A.450.

*Faconnable USA Corp. v. John Does 1-10* is similarly unhelpful to Appellants' cause. No. 11–cv–00941, 2011 WL 2015515 (D. Col. May 24, 2011) *vacated*, 799 F. Supp. 2d 1202 (D. Col. 2011). That case has been vacated as moot and is not good law, and even if it were, the Court found discovery of anonymous

32

defendant identities warranted in connection with trademark infringement and trade libel claims. *Id*. at *9. The *Faconnable* court discussed *Dendrite* and various tests applied by courts noting that *Dendrite* was not the only test applied in similar situations, and that "[n]either the Constitution, the Federal Rules of Civil Procedure, nor any decision of the Supreme Court has imposed special discovery rules in cases implicating the First Amendment." *Id*. at *5 (citing Michael S. Vogel, *Unmasking "John Doe" Defendants*, 83 OR. L. REV. 795, 824 (Fall 2004)). The court refused to quash discovery of the anonymous defendants' identities finding: (1) "absent the ability to identify the alleged malefactors, [the plaintiff] is left with no ability to vindicate its rights, and legal process is rendered meaningless"; (2) the plaintiff provided verified facts supporting its claims; and (3) the information sought was narrowly tailored and reasonable given it is otherwise discoverable under the federal rules. *Id*. at *6–7, *9.  The same can be said here.

Similarly, *Koch Industries v. Does*, No. 10-cv-1275, 2011 WL 1775765, at *10 (D. Utah, May 9, 2011), is consistent with *Arista*. In that case, the plaintiff brought claims for trademark infringement, unfair competition, and anti-cybersquatting claims, among other claims involving a website displaying a fake press release created by the defendants. The defendants moved to dismiss the plaintiff's claims based upon Federal Rules of Civil Procedure 12(b)(6) – and such motion was granted. While the court discussed *Dendrite* and stated that "courts

require plaintiffs to make a preliminary showing that their complaint has merit," it did not apply the specific factors articulated in *Dendrite* at all – instead choosing to quash the expedited discovery on the basis that the complaint was dismissed. *See Koch*, 2011 WL 1775765, at *10. Such facts are not present here.

Likewise, Appellants' reliance on *SaleHoo Grp. v. ABC Co.*, 722 F. Supp. 2d 1210, 1216–17 (W.D. Wa. 2010), is misplaced. In *SaleHoo*, the court evaluated trademark infringement claims involving a defendants' website using the plaintiff's trademark in the URL coupled with critical language (www.salehoosucks.com) and did *not* adopt *Dendrite* as the Appellants assert. Instead, the court analyzed various factors, ultimately determining that discovery was improper as the plaintiff failed to articulate a *prima facie* case or adduce any evidence to support its claims. *Id*. at 1217. In doing so, the court specifically cited *Arista* for the premise that the plaintiff must demonstrate that the information sought is necessary to identify the defendant and is relevant to the plaintiff's claims, and that the court may consider whether the plaintiff has alternative means to obtain the information sought. *Id*. (citing *Arista* and *Sony*, among other cases).  Similarly, in *Ron Paul 2021 Presidential Campaign Committee v. John Does 1-10*, No. 3:12-cv-00240 (N.D. Cal. Mar. 9, 2012),ECF No. 17, the court declined to adopt *Dendrite* or the standard articulated in *Highfields Capital*, instead focusing its analysis on whether the plaintiff could establish a *prima facie* case for trademark infringement. *See id*.

34

at *3. Because a *prima facie* case had not been made, the court declined to order expedited discovery – a scenario that comports with *Arista*.

The similarities between trademark and copyright law with regard to parody and satire defenses further support *Arista's* applicability to the Discovery Order. Both copyright and trademark infringement analyses evaluate First Amendment defenses, parody and satire in certain instances within their statutory frameworks. *See MCA, Inc. v. Wilson*, 677 F.2d 180, 185 (2d Cir. 1981) (discussing "parody" as category of potential fair use in copyright infringement actions); *Cliff Notes, Inc. v. Bantam Doubleday Dell Pub. Grp.*, 886 F.2d 490, 493–97 (2d. Cir. 1989) (discussing "parody" involving trademark infringement actions). In both intellectual property contexts, First Amendment defenses involving parody and satire are addressed by courts in determining whether to order discovery of PII under *Arista*.  Accordingly, like in *Arista*, which involved copyright infringement claims, the Lanham Act claim and New York state dilution claim at issue here have a mechanism through *Arista* to address and weigh alleged First Amendment defenses.

Thus, Appellants have failed to articulate any justification for not applying the general standard of *Arista* to the trademark claim and dilution claim asserted here.

### ii. **The District Court Properly Applied *Arista*.**

The District Court based its decision on the correct standards of law, fact findings that were not clearly erroneous, and reached a decision that was within the range of permissible outcomes. *See Klipsch Grp., Inc.*, 880 F.3d at 627. Thus, Appellants fail to establish any abuse of discretion.

First, as discussed above, the District Court applied *Arista*, the correct legal standard governing whether expedited discovery should be granted. *See* SPA.6-7. More specifically, the District Court analyzed the five *Arista* factors and found as follows:

(1) "Everytown made a *prima facie* showing of actionable harm . . .;"

(2) "the information ordered to be disclosed [] is narrowly tailored . . .;"

(3) "Everytown has not been able to ascertain the information from another source . . .;"

(4) "Everytown cannot advance its claims without the information ordered to be produced . . .;" and

(5) "the defendants' expectation of privacy, while a factor, is outweighed in this case by Everytown's need for the information to be produced . . . ."

*See* SPA.6-7. Thus, the District Court did not base the Discovery Order on an error in law or the wrong legal standard.

Second, the Discovery Order is not based upon any clearly erroneous fact findings. A finding of fact is not "clearly erroneous" unless this Court has "the definite and firm conviction that a mistake has been committed." *United States v.*

36

*U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). Here, Appellants do not argue that the District Court based its decision on any clearly erroneous fact finding. The only argument Appellants make concerning facts referenced in the Discovery Order is that the "the district court relied on and rubberstamped the same cursory and conclusory findings it made solely on Plaintiff's *ex parte* moving papers back on November 9, 2021." App. Br. at *49.

But there is no error in relying on facts previously found by the court, and those facts remained unchanged from the prior proceedings (one month earlier). On November 9, 2021, the District Court found that Everytown made a *prima facie* case of trademark infringement and could not effectively litigate its claims without the identities of the infringing parties. *See* Nov. 9 Order, at *4. Those findings are supported by the record, including USPTO trademark registration certificates presented by Everytown, screenshots of the infringing and diluting product listings displaying Everytown's registered trademarks as source identifiers, and Everytown's sworn declarations and accompanying exhibits. A.80-109; A.153; A.155-A.203; A.364-A.450. The Discovery Order re-affirmed those findings over Appellants' written objection. SPA.6. Likewise, the Discovery Order re-affirmed the prior the finding that "Everytown has stated it has not been able to ascertain any of the Defendants' physical addresses, with the exception of Defendant Defcad., Inc." SPA.7. Such finding is again supported by sworn evidence and

exhibits in the record. A.151-152. Appellants did not provide any contradictory evidence. The District Court also weighed the First Amendment rights of the Appellants in relation to Everytown's intellectual property claims pursuant to the fifth *Arista* factor. *See* SPA.7.

While the anonymous Appellants submitted "declarations" in opposition to Everytown's preliminary injunction request, the District Court previously found those "anonymous, unsigned declarations (Dkt. Nos. 56-3, 56-4, 56-5) . . . *of no evidentiary worth*" (Order (ECF 68)) (emphasis added), which is not an abuse of discretion. *See, e.g.*, *Ying Lin v. Holder*, 492 Fed. App'x 199, 201 (2d Cir. 2012) (finding no abuse of discretion where administrative law judge afforded unsworn letter diminished evidentiary weight); *see also Capalbo v. United States*, No. 10-cv-2563, 2012 WL 1288486, at *10, n.8 (S.D.N.Y. Apr. 16, 2012) (determining "undated and unsigned" declaration "lack[ed] facial credibility"); *Azkour v. Little Rest Twelve, Inc.*, No. 10-cv-4132, 2012 WL 402049, at *3, n.1 (S.D.N.Y. Feb. 7, 2012) (determining "unsigned" statement was "of no utility to the Court" as it failed to comply with 28 U.S.C. § 1746 and its "authenticity [was] suspect").[4] The Appellants did not submit any additional briefing on the issue and did not submit additional declarations from the anonymous defendants, which they could have

---

[4] Everytown notes that the "declaration" submitted by Appellant Defcad User Freeman1337 was not only anonymous, and unsigned, but was not even dated. A.289.

done in connection with the Discovery Order proceedings.

Third, the Discovery Order was clearly within the range of permissible decisions. Indeed, it correctly followed the law, was based on record evidence, and comported with this Court's previous denial of Appellants' Petition.

Thus, the District Court did not abuse its discretion.

III. **Appellants Do Not Have an Unfettered Right to Anonymous Free Speech.**

Free speech under the First Amendment is not without limits. *See Schenck v. United States*, 249 U.S. 47, 52 (1919) (discussing how you cannot falsely cry "fire" in a crowded theater). It is well established that "[p]arties may not use the First Amendment to encroach upon the intellectual property rights of others." *Sony*, 326 F. Supp. 2d at 564 (citing *In re Cap. Cities/ABC, Inc.*, 918 F.2d 140, 143 (11th Cir. 1990)); *see also Arista*, 664 F.3d at 118; *accord Mut. of Omaha Ins. v. Novak*, 836 F.2d 397, 402 (8th Cir. 1987); *Dallas Cowboys Cheerleaders, Inc. v. Scoreboard Posters, Inc.*, 600 F.2d 1184, 1188 (5th Cir. 1979). Thus, as set forth below, Appellants do not have an absolute First Amendment right to anonymously advertise and sell the Infringing Products using exact replicas of the Everytown Marks (*see* ECF 65, at *15-20).

"Free speech rights do not extend to labelling or advertising products in a manner that conflicts with the trademark rights of others. In these circumstances, the exclusive right guaranteed by the trademark law is generally superior to the

general free speech rights of others." *See Yankee Pub. Inc. v. News Am. Pub., Inc.*, 809 F. Supp. 267, 276 (S.D.N.Y. 1992) (citing *Rogers v. Grimaldi*, 875 F.2d 994, 999 (2d Cir. 1989)). This legal landscape is not changed if a defendant asserts his use as "parody." *Anheuser-Busch, Inc. v. Balducci Publ'ns*, 28 F.3d 769, 775–76 (8th Cir. 1994). Where a defendant uses a trademark "for the purpose of source identification, the trademark law generally prevails over the First Amendment." *See Yankee Pub. Inc.*, 809 F. Supp. at 276; *see also Novak*, 836 F.2d at 402-03 (holding alleged First Amendment interests of defendant selling t-shirts with "very similar" designs to the plaintiff's marks with letters and styles that were virtually identical was outweighed by the trademark rights of the plaintiff); *see also Anheuser-Busch, Inc.*, 28 F.3d at 775–76 (holding trademark rights of plaintiff outweighed any claimed First Amendment parody rights where defendant displayed "virtually unaltered" versions of the trademarks on the back of a magazine ad and ad was tarnishing to the plaintiff's trademark and image).

Further, where a mark is used to promote a non-expressive, commercial product, the First Amendment does not extend to such use, or to the extent that it does, the balance tips in favor of allowing trademark recovery, if in fact consumers are likely to be confused. *See Harley Davidson, Inc. v. Grottanelli*, 164 F.3d 806, 812–13 (2d Cir. 1997); *United We Stand Am., Inc. v. United We Stand, Am. N.Y., Inc.*, 128 F.3d 86, 93 (2d Cir. 1997).

40

a. **Appellants' Use of the Registered Everytown Trademarks as Source Identifiers Weighs Against Anonymity.**

Here, Appellants' First Amendment interests (to the extent they have any) are outweighed by the blatant trademark infringement and dilution under New York State law occurring in violation of Everytown's rights. Appellants' use of identical copies of the Everytown Marks is not defensible as parody or nominative fair use. In connection with its expedited discovery request, Everytown submitted briefing and sworn declarations demonstrating that it has made a *prima facie* case for its N.Y. dilution claim and trademark infringement claim as demonstrated below, defeating any claimed right to anonymity.

i. **Appellants Are Targeting the Everytown Marks Under N.Y. Gen. Bus. L. § 360-l.**

New York General Business Law Section 360-l requires only that the plaintiff's mark be "truly distinctive or has acquired secondary meaning" in order to be diluted by unauthorized use.[5] Marks registered on the Principal Register without the need for proof of secondary meaning, including the Everytown Marks, are presumed to be inherently distinctive. *See Lane Cap. Mgmt., Inc. v. Lane Cap. Mgmt., Inc.*, 192 F.3d 337, 345 (2d. Cir. 1999); A.149-152. Everytown also submitted evidence that its Marks are also commercially strong – Everytown has

---

[5] *Coty Inc. v. Excell Brands, LLC*, 277 F. Supp. 3d 425, 458 (S.D.N.Y. 2017) (internal citation omitted).

over six million supporters[6], hundreds of thousands of social media followers, and has had the Everytown Marks featured prominently at rallies, events, and by national news outlets. A.194-A203. Such evidence demonstrates the strength of the Everytown Marks. *See Cartier Inc. v. Four Star Jewelry Creations, Inc.*, No. 01-cv-11295, 2003 WL 21056809, at *8 (May 8, 2003); *N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 322 (S.D.N.Y. 2010).

Appellants' use unquestionably dilutes the Everytown Marks as it portrays them in "an unwholesome or unsavory context, with the result that the public will associate the . . . lack of prestige in the defendant's goods with the plaintiff's unrelated goods." *Pfizer Inc. v. Sachs*, 652 F. Supp. 2d 512, 525 (S.D.N.Y. 2009) (citing *Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497, 507 (2d Cir. 1996)). "The *sine qua non* of tarnishment is a finding that plaintiff's mark will suffer negative associations through defendant's use."[7] Tarnishment can result from use of a mark in connection with an industry or business topic with which a plaintiff would not want to be associated. *See, e.g.*, *N.Y. Stock Exch., Inc. v. N.Y., N.Y. Hotel, LLC*, 293 F.3d 550, 558 (2d Cir. 2002) (reversing summary judgment

---

[6] Everytown notes that since the submission of the Declaration of Matthew McTigue, Everytown now has nearly ten million supporters.

[7] *NBA Props. v. Untertainment Records LLC*, No. 99-CIV.-2933, 1999 WL 335147, at *8 (S.D.N.Y. May 16, 1999) (quoting *Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497, 507 (2d Cir. 1996)) (granting preliminary injunction related to dilution by tarnishment in matter involving distorted NBA logo containing a basketball player with a gun in his hand).

dismissal of Section 360-l claim based on use of plaintiff's NEW YORK STOCK EXCHANGE marks in context of casino services as "NEW YORK NEW YORK STOCK EXCHANGE" and "NEW YORK $LOT EXCHANGE" where defendant's use would harm plaintiff's reputation for listing companies on the New York Stock Exchange that adhere to its rules and harm plaintiff's reputation for "integrity and transparency."); *Nat'l Acad. Of TV Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*, 551 F. Supp. 3d 408, 425–26 (S.D.N.Y. 2021) (denying motion to dismiss Section 360-l claim where defendant used almost identical copy of plaintiff's Emmy Statuette in connection with YouTube video discussing COVID-19).

Indeed, Appellants are using the Everytown Marks without alteration or comment in connection with 3-D ghost gun parts and accessories—including on assault weapons and high-capacity magazines—all of which are dangerous, deadly, and in some cases illegal products. *See N.Y. Stock Exch.*, 293 F.3d at 558. Appellants have also admitted their intent to "disparage" Everytown through their actions (App. Br. at *8) – conduct that anti-dilution laws seek to prevent. *See, e.g.*, H.R. Rep. No. 104-374, at 2 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 1029, 1030. Such evidence was plainly sufficient to support the District Court's analysis of the merits in issuing the Discovery Order.

### ii. Appellants are Violating the Lanham Act (15 U.S.C. §§ 1114, 1125(a)).

Everytown has also established a *prima facie* case for trademark infringement, as (1) it owns valid, protectable, trademarks; (2) Appellants used the marks in commerce without Everytown's consent; and (3) the unauthorized use resulted in a likelihood of confusion. 15 U.S.C. § 1114(1). Appellants are using the Everytown Marks commercially as a source identifier on Infringing Product listings, product descriptions, in downloadable files for 3-D printing firearm parts and accessories in exchange for monetary compensation (A.156; A.159; A.183-185; A.367-368; A.371; A.393; and A.395), and on actual firearms, parts, and accessories, which effects Everytown's ability to control the quality of its services offered under its trademarks. Everytown need not prove its case on the merits with certainty at this stage, but merely needs to demonstrate a *prima facie* case for purposes of discovering Appellants' identities, which it has done.

To evaluate likelihood of confusion, courts within the Second Circuit look to the seven factors described in *Polaroid Corp. v. Polaroid Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961). Here the *Polaroid* factors favor Everytown as:

- the Everytown Marks are strong, well-known, unique, and distinctive[8];

---

[8] *See* A.81-A.109; A.111-A.149; A.154; A.198-A.202; *N.Y.C. Triathlon*, 704 F. Supp. 2d 314–15; *Burberry Ltd. v. Euro Moda, Inc.*, No. 08-cv-5781, 2009 WL 1675080, at *10–12 (S.D.N.Y. June 10, 2009).

- Appellants are using Everytown's *identical* trademarks without alteration, addition, or subtraction[9];

- Both Everytown and Appellants' goods, services, and advocacy involve the topic of firearms, firearm parts, and accessories[10];

- It is possible that Everytown could endorse a particular firearm safety mechanism or safety accessory in the future because Everytown is not anti-gun, but pro-gun safety[11];

- Appellants intentionally adopted the *identical* Everytown Marks, and received notice that their conduct was infringing, but continued their conduct[12];

- the firearm parts and accessories that may be printed using Appellants' Infringing Products are—when combined with other parts (to make assault weapons) or on their own (high-capacity magazines)—illegal in New York, among other states[13]; and

---

[9] *See* A.162-A.175; *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 149 (2d Cir. 2003); *Mushroom Makers, Inc. v. R.G. Barry Corp.*, 580 F.2d 44, 49 (2d Cir. 1978)

[10] A.81-A.109; *Virgin Enters*, 335 F.3d at 149-50; *Safeway Stores, Inc. v. Safeway Props., Inc.*, 307 F.2d 495, 498–99 (2d Cir. 1962).

[11] *See* ECF 65, at *14, n.6.

[12] A.191-A.192; *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 259 (2d Cir. 1987); *Heritage of Pride, Inc. v. Matinee NYC, Inc.*, No. 14-cv-4165, 2014 WL 12783866, at *11 (S.D.N.Y. June 20, 2014); *Paddington Corp. v. Attiki Imps. & Distribs. Inc.*, 996 F.2d 577, 586–87 (2d Cir. 1993).

[13] *See, e.g.*, N.Y. Penal Law §§ 265.00(22), 265.00(23), 265.02(7), (8), 265.10; *Road Dawgs Motorcycle Club of the U.S., Inc. v. Cuse Road Dawgs, Inc.*, 679 F.

45

- the inexpensive nature of Appellants' Infringing Products (e.g., a small subscription fee) creates low barriers to entry for consumers to obtain the products[14].

Thus, the record demonstrates sufficient facts such that the District Court did not abuse its discretion in applying the *Arista* factors.

### iii. Appellants' Use of the Everytown Marks is Not Permissible Parody.

The record is clear that Appellants' unauthorized use of the Everytown Marks is not permissible parody. The cornerstone of parody is commentary, distortion, and alteration:

> A parody must convey two simultaneous—and contradictory—messages: that it is the original, but also that it is not the original and is instead a parody. To the extent that it does only the former but not the latter, it is not only a poor parody but also vulnerable under trademark law, since the consumer will be confused.

*Cliffs Notes, Inc. v. Bantam Boubleday Dell Pub. Grp.*, 886 F.2d 490, 494 (2d Cir. 1989) (emphasis in original); *see also Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 113 (2d Cir. 2009) ("[A] parody relies upon a difference from the original mark . . . in order to produce its desired effect.") (citation omitted).

---

Supp. 2d 259, 290 (N.D.N.Y. 2009) (describing where a defendant's goods and/or services are associated with potential illegal activity, this *Polaroid* factor has weighed in favor of the movant).

[14] A.159; *Specialty Brands, Inc. v. Coffee Bean Distribs., Inc.*, 748 F.2d 669, 672 (Fed. Cir. 1984); *Kraft Foods Grp. Brands LLC v. Cracker Barrel Old Country Store, Inc.*, 735 F.3d 735, 739 (7th Cir. 2013).

"The heart of any parodist's claim…is the use of some elements of a prior author's composition to create a new one that, at least in part, comments on that author's work…The comment must have some 'critical bearing on the substance or style of the original composition.'" *Harley Davidson*, 164 F.3d at 812-13 (rejecting parody defense where defendants made no comment on mark and "simply use[d] it somewhat humorously to promote his own products and services"); *see also People for the Ethical Treatment of Animals v. Doughney,* 263 F.3d 359, 366 (4th Cir. 2001) (rejecting parody where defendant simply copied "PETA's Mark, conveying the message that it is related to PETA" and did "not convey the second, contradictory message needed to establish a parody—a message that the domain name is not related to PETA, but that it is a parody of PETA").

Appellants' use of the Everytown Marks as source identifiers without any additions, subtractions, commentary, or other prominent source identifiers falls woefully short of such requirements and fails as a parody, particularly where Appellants' Infringing Products are commercial in nature and are being exchanged for monetary compensation. Courts have rejected parody arguments in similar scenarios. *See e.g., Nat'l Acad. Of TV Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*, 551 F. Supp. 3d 408, 423 (S.D.N.Y. 2021) (rejecting parody defense because "a secondary work that simply appropriates material from an existing work without directing its criticism at the copied work itself is not parody") (internal citation

47

omitted)); *Gucci Shops, Inc. v. R. H. Macy & Co.,* 446 F. Supp. 838, 839–40
(S.D.N.Y. 1977) (granting preliminary injunction and rejecting parody defense
because "[t]he fact that the offending product was intended only as a joke [was] of
no consequence," when except for the addition of the letter "H," Defendant's use
of the GUCCHI GOO mark was identical to Plaintiff's registered GUCCI mark);
*Planned Parenthood Fed'n of Am., Inc. v. Bucci*, No. 97-cv-0629, 1997 WL
133313, at *8 (S.D.N.Y. Mar. 24, 1997) (rejecting parody argument and granting
preliminary injunction where defendant, who ideologically opposed Planned
Parenthood's mission and sought to present opposing viewpoint used domain name
"plannedparenthood.com," used "nearly identical" marks). Appellants do not
distinguish any of the cases where courts have rejected parody defenses from their
use of the Everytown Marks.

The cases relied upon by Appellants are easily distinguishable. For example,
*Yankee Publishing Inc. v. News America Publishing, Inc.*, 809 F. Supp. 267
(S.D.N.Y. 1992), concerned a trade dress dispute involving the "The Old Farmer's
Almanac" trade dress parodied on the cover of *New York* Magazine. The court
granted judgment in favor of the defendant finding parody where the defendant's
magazine featured its own "highly successful" trademark prominently displayed on
the cover in the usual bold font without mention of the word "Almanac,"
substituted depictions of Ben Franklin and Almanac founder Robert B. Thomas in

48

favor of Mr. and Mrs. Santa Claus, and substituted "the *Almanac's* dour images of farm work" for "jolly Christmas scenes." *Id*. at 271, 278. Likewise, *Rogers v. Grimaldi*, a case where summary judgment was granted in favor of the defendant involving a movie entitled "Ginger and Fred," is again distinguishable from this case as it involved the title of an "artistic work" – a movie – that did not use the entirety of the plaintiff's asserted trademarks. In that case, the Court affirmed the district court's holding for the defendant based on First Amendment concerns (not involving parody) related to "undisputed artistic relevance of the title to the content" of the movie, an artistic work. *See* 875 F.2d at 998–99. Such is not the case here, where the Infringing Products are ordinary commercial goods utilizing exact replicas of the Everytown Marks in their entirety. *Louis Vuitton Malletier S.A. v. Warner Bros. Ent., Inc.,* 868 F. Supp. 2d 172, 174–75, 178 (S.D.N.Y. 2012), is even further afield. In that case, the court dismissed the plaintiff's claims as the defendant did not use the challenged trademark on the product or in the title of the work, a movie entitled "The Hangover: Part II," or other source identifier of the film; rather, it used a look-a-like bag within the movie itself. Appellants' remaining cited cases are similarly inapposite.[15]

---

[15] *See, e.g.*, *VIP Prods LLC v. Jack Daniel's Props., Inc.*, 953 F.3d 1170, 1175 (9th Cir. 2020) (involving modification of mark to "Bad Spaniels" on dog toy with "old no. 2" text visible); *Radiance Found., Inc. v. N.A.A.C.P.*, 786 F.3d 316, 319 (4th Cir. 2015) (involving use of NAACP article title on website including "National Association for the Abortion of Colored People" where use was in connection with

49

Here, Appellants fail to cite any authority for the proposition that their wholesale use of Everytown's Marks, without any alteration or related commentary, is immune from suit based on parody.  Indeed, Appellants' identical use makes it far from clear to the ordinary observer—*i.e.*, someone seeing the mark used on the internet as a file name or the mark branded on a semi-automatic rifle that someone is carrying—that Everytown is not the source or is otherwise unconnected to or unassociated with the Infringing Products. *See My Other Bag, Inc.*, 156 F. Supp. 3d at 435 ("[a] parody clearly indicates to the ordinary observer 'that the defendant is not connected in any way with the owner of the target trademark.'") (citations omitted). Even in *Rogers*, the court made clear that any limiting construction of the Lanham Act would not apply in cases where a defendant's alleged artistic use of a trademark was confusingly similar to the original. *Rogers v. Grimaldi*, 875 F.2d 994, 999 n.5 (2d Cir. 1989).

---

entire article critical of the NAACP and altered the use from "National Association for the Advancement of Colored People"); *Lamparello v. Fallwell*, 420 F.3d 309, 311 (4th Cir. 2005) (involving modified version of mark in website URL with URL pages critical of mark owner); *Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*, 156 F. Supp. 3d 425, 435 (S.D.N.Y. 2016) (finding parody in case where defendant depicted a modified version of plaintiff's high-end handbag, changing the trademarks, and other source identifiers, on the back of a canvas tote with one side stating "My Other Bag"); *ProtectMarriage.com v. Courage Campaign*, 680 F. Supp. 2d 1225, 1226–27 (E.D. Cal. 2010) (involving an altered the movant's logo by adding different text, different images of figures, and the defendants actions did not involve the sale of goods or other economic activity).

The cases cited by Appellants in support of an alleged "juxtaposition" of their use of the Everytown Marks on an unlikely product or placement are similarly inapposite. *Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC*, concerned the use of modified versions of the plaintiff's TOMMY HILFIGER Marks in connection with dog perfume. 221 F. Supp. 2d 410 (S.D.N.Y. 2002). The defendant modified the TOMMY HILFIGER marks to be "Timmy Holedigger," referring to a dog's propensity to dig holes, and also used a "bone-shaped logo" instead of an identical version of plaintiff's trademarks. Similarly, in *Louis Vuitton Malletier S.A., Haute Diggity Dog, LLC*, the defendant modified the plaintiff's "LOUIS VUITTON" trademarks in connection with "Chewy Vuiton" dog toys. 507 F.3d 252, 260 (4th Cir. 2007). Such modification is lacking here where Appellants used the identical versions of the Everytown Marks.

Likewise, Appellants' contention that "upon downloading" the Infringing Products a user may receive multiple files in connection with the Infringing Products with various names (App. Br. at *41), does not cure Appellants' use of the identical Everytown Marks as source identifiers on the product listing pages, on the product renderings, and on actual gun parts and accessories created with the Infringing Products. To be a successful parody, "a parody must convey two *simultaneous* – and contradictory messages . . . ." *Cliffs Notes, Inc.*, 886 F.2d at 494 (emphasis added). A consumer viewing listings or advertisements for the

51

Infringing Products, but who never downloads the Infringing Products, will never have any knowledge, let along simultaneous knowledge, as to the contents of the Infringing Products "upon downloading." Likewise, a consumer that downloads the Infringing Products and then later learns of potential additional files contained within the Infringing Products is not learning of those files *simultaneously* when viewing Appellants' Infringing Product listings, advertisements, and promotions – all of which contain exact replicas of Everytown Marks, without alteration, and prominently displayed as source identifiers as depicted below. Nothing about the listings makes it immediately apparent that the Infringing Products are not sponsored, affiliated, or created by Everytown (A.446-447).





Thus, the District Court properly denied Appellants' effort to avoid discovery based on a parody defense.

### iv. Appellants' Use of the Everytown Marks is Not Nominative Fair Use.

Appellants' argument that their use of the Everytown Marks constitutes "nominative fair use" should be rejected. App. Br. at *33-34. Courts look to the following factors when evaluating nominative fair use, in addition to the factors articulated in *Polaroid*: (1) "whether the use of the plaintiff's mark is necessary to describe both the plaintiff's product or service and the defendant's product or service, that is, whether the product or service is not readily identifiable without use of the mark;" (2) "whether the defendant uses only so much of the plaintiff's mark as is necessary to identify the product or service;" and (3) "whether the defendant did anything that would, in conjunction with the mark, suggest

53

sponsorship or endorsement by the plaintiff holder, that is, whether the defendant's conduct or language reflects the true or accurate relationship between plaintiff's and defendant's products or services." *Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Security Univ., LLC*, 823 F.3d 153, 168 (2d Cir. 2016).[16] When assessing the second factor, courts consider whether the alleged infringer "step[ped] over the line into a likelihood of confusion by using the senior user's mark too prominently or too often, in terms of size, emphasis, or repetition." McCarthy on Trademarks & Unfair Competition, § 23:11 (5th ed. 2019).

Here, Appellants have used identical replicas of the Everytown Marks in bold large font, using the Marks in their entirety, which does not constitute fair use. *See, e.g.*, *Security Univ.*, 823 F.3d at 168 (citing *PACCAR Inc. v. TeleScan Techs, L.L.C.*, 319 F.3d 243, 256 (6th Cir. 2003)) (describing how the use of distinctive fonts went beyond nominative fair use). The images highlighted in Appellants' own brief show the Everytown Marks featured more prominently than any other conceivable source identifier. *See Nespresso USA, Inc. v. Africa Am. Coffee Trading Co.,* No. 15-cv-5553, 2016 WL 3162118, at *3–5 (S.D.N.Y. June 2, 2016) (finding against nominative fair use where user depicted Nespresso mark on packaging as "Nespresso compatible").

---

[16] Appellants advocate a nominative fair use test separate and apart from the factors articulated in *Polaroid* (App. Br. 45), but this Court has explicitly rejected that approach. *Security Univ., LLC*, 823 F.3d at 168.

For instance, the screenshot of Appellants' advertisement and promotion of the Infringing Products on Ctrl+Pew depicts the Everytown Marks at least four times. *See* App. Br. at *34. Three of those uses are featured in substantially larger font than either "freeman1337" or "the gatalog." *Id.* at 34. Likewise, in the image featured from Defcad, "Everytown" is the most prominent source identifier on the page, and appears again within the file description, and within the product tag. *See* App. Br. at *35. All other conceivable source identifiers on the page pale in comparison in size and number. Further, the Twitter post highlighted by the Appellants indicates that the user may have been hired or sponsored by Everytown to design the gun depicting an Everytown Mark, stating "I designed it special for you," and tagging Everytown in the post. App. Br. at *31.

Courts regularly find a likelihood of confusion where the most dominant feature in connection with a product listing is the plaintiff's trademark. *See, e.g.*, *Cartier, Inc. v. Deziner Wholesale, L.L.C.*, No. 98-cv-4947, 2000 WL 347171, at *4 (S.D.N.Y. Apr. 3, 2000) (collecting cases and granting judgment for Cartier where the defendant's sunglasses label displayed the Cartier name more prominently of any claimed defendant's mark).

Appellants' argument also ignores the fact that the Lanham Act is not only concerned with confusion as to source, but also "confusion regarding affiliation, sponsorship, or endorsement by the mark holder," *Security Univ.*, 823 F.3d at 168,

all of which are present here. Thus, Appellants' use of the Everytown Marks is not nominative fair use.

> **b. The *Rogers* Test Is Inapplicable to Appellants' Use of the Everytown Marks.**

The Infringing Products in this case – downloadable instructions for printing 3-D printed gun parts and accessories bearing identical versions of the Everytown Trademarks – are ordinary commercial products that fall outside of traditional "artistic works" in which courts have applied the test articulated in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989). In *Rogers*, this Court crafted a test for evaluating First Amendment considerations in Lanham Act cases involving expressive elements of titles of "artistic works." *See id.* at 998. The "artistic work" at issue in *Rogers* was a fictional movie entitled "Ginger and Fred," which alluded to Hollywood stars Ginger Rogers and Fred Astaire, although the film was not sponsored by or affiliated with Rogers or Astaire. *Id.* at 994. The Court reasoned that crafting a test specific to titles of "artistic works" was necessary because:

> Though consumers frequently look to the title of a work to determine what it is about, they do not regard titles of artistic works in the same way as the names of ordinary commercial products. Since consumers expect an ordinary product to be what the name says it is, we apply the Lanham Act with some rigor to prohibit names that misdescribe such goods.

*Id.* at 1000. The Court's distinction between "artistic works" and "ordinary commercial products" is key.

Like *Rogers*, its progeny has recognized this distinction and has applied the *Rogers* test sparingly to instances where the allegedly infringing article at hand was a traditional "artistic work," such as a movie, book, video game, television show, or song. *Compare, Twin Peaks Prods. Inc. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366, 1379 (2d Cir. 1993) (applying *Rogers* in the context of a book title) and *Lombardo v. Dr. Seuss Enters., L.P.*, 729 Fed. App'x 131, 132–33 (2d Cir. 2018) (applying *Rogers* in the context of a play title) *with Harley Davidson*, 164 F.3d at 812–13 (not applying the *Rogers* test to an instance of alleged parody involving the logo of business that appeared in connection with motorcycle repair business newsletter, signage, and t-shirts); and *Planned Parenthood Fed'n of Am., Inc. v. Bucci*, No. 97-cv-0629, 1997 WL 133313, at *11 (S.D.N.Y. Mar. 24, 1997) (finding domain name and homepage address www.plannedparenthood.com as source identifiers and not "titles" as contemplated by *Rogers*, and finding the domain name and homepages address had "no artistic implications" as to the web site's source or content); *see also Univ. of Alabama, Bd. Of Trustees v. New Life Art, Inc.*, 683 F.3d. 1266, 1278 (11th Cir. 2012) (applying Rogers to protect "artistically expressive works" like paintings, prints, and calendars, but not "mundane" articles like mini-prints, mugs, cups, flags, towels, and t-shirts).

Here, the Infringing Products are not "artistic works" under *Rogers*. They are not movies, songs, films, paintings, dramatic works, or other goods

traditionally found to be "artistic." Rather, they are ordinary commercial products that should be evaluated under the likelihood of confusion factors set forth in *Polaroid*. The cases cited by Appellants are largely consistent with this position. *See* App. Br., at *29 (citing *Radiance Found., Inc. v. N.A.A.C.P.*, 786 F.3d 316 (4th Cir. 2015)) (applying *Rogers* test to title of a non-commercial literary work, an article critical of the defendant); and *Protectmarriage.com v. Courage Campaign*, 680 F. Supp. 2d 1225, 1229 (E.D. Cal. 2010) (discussing *Rogers* in context of modified website logo image where text was critical of plaintiff, and the website was not offering a product).

The remaining case discussing *Rogers* cited by the Appellants – *VIP Prod. LLC v. Jack Daniel's Properties, Inc.*, 953 F.3d 1170 (9th Cir. 2020) – is not binding upon this Court and is an outlier with respect to its application of the *Rogers* test (a test traditionally applied to titles of artistic works) to an ordinary commercial good (a dog toy). The court ultimately found that the dog toy, an ordinary commercial good, was an expressive work protected by the First Amendment as it created a humorous message modifying the plaintiff' trademark ("Old No. 7 Brand") to a "silly message" placing "The Old No. 2" on the toy. Instead of applying the traditional factors used to evaluate parody in instances involving ordinary consumer goods, the court in *VIP Products* applied the *Rogers* test finding in favor of the defendant. The Ninth Circuit's holding applying *Rogers*

to a dog toy, an ordinary commercial good, contrasts with other holdings analyzing similar dog toys. *See Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 260 (4th Cir. 2007) (analyzing traditional parody factors involving juxtaposition of a plaintiff's mark with the alleged parodic use, not *Rogers*, to infringement claims involving "Chewy Vuiton" dog toy).

Unlike *VIP Products*, governing Second Circuit precedent applies a traditional parody analysis where ordinary, non-artistic goods are at issue. *See Louis Malletier, S.A. v. My Other Bag, Inc.*, 674 Fed. App'x 16, 18 (2d Cir. 2016) (applying traditional likelihood of confusion defenses, not the *Rogers* test, to alleged parodic use of a trademark on non-artistic good, a bag), *cert. denied*, 138 S. Ct. 221 (2017); *accord Louis Vuitton Malletier S.A. v. Warner Bros. Ent. Inc.*, 868 F. Supp. 2d 172, 177 (S.D.N.Y. 2012) (applying *Rogers* test to situation involving depiction of knock-off Louis Vuitton bag within traditional artist work, a movie).

## CONCLUSION

Based on the foregoing, Everytown respectfully requests that the Court dismiss the instant appeal and/or affirm the District Court's Discovery Order.

Respectfully submitted,

Dated: June 29, 2022

VENABLE LLP

/s/Marcella Ballard

Marcella Ballard
Maria Sinatra
1270 Avenue of the Americas,
24th Floor
New York, NY 10020
Tel.: 212-307-5500
Fax: 212-307-5598
mballard@venable.com
mrsinatra@venable.com

*Counsel for Appellee Everytown for Gun Safety Action Fund, Inc.*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limited of Fed. R. App. P. 32(a)(7)(B), the word limit of Local Rule 32.1(a)(4) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) this document contains 13,334 words.

The document also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font Times New Roman.

Dated: June 29, 2022

/s/Marcella Ballard

Marcella Ballard